## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PASQUALE T. DEON, SR. and MAGGIE HARDY MAGERKO, | Civil Action No.:  1:17-cv-1454-SHR |
| Plaintiffs, | Honorable Sylvia H. Rambo |
| v. | (Electronically Filed) |
| DAVID M. BARASCH, KEVIN F. O'TOOLE, RICHARD G. JEWELL, SEAN LOGAN, KATHY M. MANDERINO, MERRITT C. REITZEL, OBRA S. KERNODLE, IV, and DANTE SANTONI JR., Members of the Pennsylvania Gaming Control Board, in their official capacities; PAUL MAURO, Director of the Pennsylvania Gaming Control Board's Bureau of Investigation and Enforcement, in his official capacity; CYRUS PITRE, Director of the Pennsylvania Gaming Control Board's Office of Enforcement Counsel, in his official capacity; and JOSH SHAPIRO, Attorney General of Pennsylvania, in his official capacity. | |
| Defendants. | |

## PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANTS' MOTION FOR STAY PENDING APPEAL

# TABLE OF CONTENTS

**Page**

Overview ....................................................................................................1

Background ...............................................................................................3

Legal Standard .........................................................................................4

Argument..................................................................................................5

I.    The Defendants have not shown a likelihood of success on appeal ............5

II.    The Defendants have not shown that they will be irreparably injured absent a stay pending appeal.......................................................................8

III.    The Plaintiffs will suffer irreparable harm if this Court's injunction is stayed pending appeal ..........................................................................11

IV.    A stay would be against the public interest...............................................14

Conclusion ..............................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ACLU v. Ashcroft*,
  322 F.3d 240 (3d Cir. 2003) ...................................................................9

*Baker v. Adams Cty./Ohio Valley Sch. Bd.*,
  310 F.3d 927 (6th Cir. 2002) ................................................................5

*Buckley v. Valeo*,
  424 U.S. 1 (1976).............................................................................3, 7, 11, 15

*Christian Legal Soc'y v. Walker*,
  453 F.3d 853 (7th Cir. 2006) ............................................................15

*Citizens United v. F.E.C.*,
  558 U.S. 310 (2010)............................................................................7

*Deon v. Barasch*,
  2018 WL 4492946 (M.D. Pa. 2018) ....................................................1

*DePaul v. Commonwealth*,
  969 A.2d 536 (Pa. 2009).................................................................2, 6

*Elrod v. Burns*,
  427 U.S. 347 (1976)........................................................................3, 12

*Hilton v. Braunskill*,
  481 U.S. 770 (1987).........................................................................2, 5

*Jamal v. Kane*,
  105 F. Supp. 3d 448 (M.D. Pa. 2015)................................................15

*K.A. ex rel. Ayers v. Pocono Mountain Sch. Dist.*,
  710 F.3d 99 (3d Cir. 2013) ................................................................12

*McCutcheon v. F.E.C.*,
  572 U.S. 185 (2014)..........................................................3, 6, 8, 11, 12

*Lodge No. 5 of Fraternal Order of Police ex rel. McNesby v. City of Phila.*,
  763 F.3d 358 (3d Cir. 2014) ...........................................................8, 15

*New York Progress & Prot. PAC v. Walsh,*
   733 F.3d 483 (2d Cir. 2013) ...............................................................12, 14, 15

*Nken v. Holder,*
   556 U.S. 418 (2009)...........................................................................................4, 5

*O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft,*
   389 F.3d 973 (10th Cir. 2004) (en banc) ............................................................13

*Ohio State Conference of NAACP. v. Husted,*
   769 F.3d 385 (6th Cir. 2014) ..............................................................................13

*Pa. Democratic Party v. Republican Party of Pa.,*
   Civ. No. 16-5664, 2016 WL 6582659 (E.D. Pa. Nov. 7, 2016) .......................6, 9

*Phila. Fire Fighters' Union Local 22 v. City of Phila.,*
   286 F. Supp. 2d 476 (E.D. Pa. 2003)..................................................................10

*Republic of Philippines v. Westinghouse Elec. Corp.,*
   949 F.2d 653 (3d Cir. 1991) .................................................................................5

*In re Revel AC, Inc.,*
   802 F.3d 558 (3d Cir. 2015) ........................................................................5, 6, 8

*United Food & Commercial Workers Union, Local 1099 v. Sw. Ohio
   Reg'l Transit Auth.,*
   163 F.3d 341 (6th Cir. 1998) ..............................................................................13

*United States v. Judicial Watch, Inc.,*
   241 F. Supp. 2d 15 (D.D.C. 2003)....................................................................7, 8

*United States v. Price,*
   688 F.2d 204 (3d Cir. 1982) ...............................................................................12

*Ex Parte Young,*
   209 U.S. 123 (1908)...............................................................................................8

## Statutes

42 U.S.C. § 1983 .......................................................................................................8

4 Pa. C.S. § 1513.................................................................................................*passim*

**Other Authorities**

U.S. Const. amend. I ........................................................................................*passim*

Fed. R. Civ. P. 62(a)(1)..................................................................................2, 4, 9

## Overview

This Court should deny the Defendants' motion to stay.  On September 19, 2018, this Court enjoined enforcement of § 1513 of the Pennsylvania Gaming Act, declaring that it violates the First Amendment because the "wholesale prohibition of contributions of any amount by citizens with even an attenuated connection to the gaming industry far exceeds the necessary scope of a prohibition seeking to eliminate corruption."  (ECF Nos. 57 at 29-30; 58);[1] *Deon v. Barasch*, 2018 WL 4492946, at *10-11 (M.D. Pa. 2018); *see* 4 Pa. C.S. § 1513.  This Court's injunction freed citizens, such as the Plaintiffs, to participate in our democracy through political contributions.   Now, after waiting nearly one month, the Defendants seek to stay this Court's injunction pending appeal without any justification for the delay and without any valid basis to justify a reinstatement of the suppression of First Amendment rights.  (ECF Nos. 69, 70.)  The Defendants' cursory motion does not come close to satisfying *any* of the stay criteria.

First, the stay motion comes far too late.  The Court entered a permanent injunction nearly one month before the Defendants moved for a stay.  (ECF No. 58.)   The Defendants themselves point out that an active election period is occurring right now, with statewide elections set for November 6, 2018.  (ECF No. 70 at 3.)  Pennsylvania citizens who might otherwise have been targeted by the

---

[1] ECF references are to the docket in this action.

unconstitutional statute have been free to make contributions without concern about the statute's enforcement since the Court's injunction went into effect. *See* Fed. R. Civ. P. 62(a)(1). This dispute presents the type of situation where the Defendants should have sought an emergency motion for stay or certainly sought a stay far more quickly than they did. The consequence of their decision to wait until this late hour is that they are now asking this Court to put *back* into effect a restraint on speech that the Court held unconstitutional. There is no basis for such an extraordinary request and its administration would be virtually impossible given the freedoms that have now been in place as a result of the injunction.

Second, the Defendants have not made any showing that they will succeed on appeal, let alone the "strong showing" required to obtain a stay. *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987). They simply rehash a few of the same arguments that this Court and the Pennsylvania Supreme Court have already rejected. (ECF No. 57 at 24-31); *DePaul v. Commonwealth*, 969 A.2d 536, 543-54 (Pa. 2009).

Third, the Defendants have not shown that they likely will suffer any harm if a stay is denied. They do not even describe *any* perceivable harm that might result. They merely speculate that some type of undefined harm to gaming integrity and the electoral process might occur if First Amendment rights are not restrained for the duration of these proceedings. The Supreme Court requires that they

demonstrate that there would be some specific example of *quid pro quo* corruption or its appearance—meaning an effort by someone to exercise control over a state official's performance of required duties. *See McCutcheon v. F.E.C.*, 572 U.S. 185, 192, 207-08 (2014). There is no such showing here.

Fourth, a stay of this Court's injunction indisputably would cause considerable harm to the Plaintiffs because "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373-74 (1976).

Finally, a stay would undermine the public interest, not serve it. The Defendants outright admit that they seek a stay for the unconstitutional purpose of "prevent[ing] a surge of political contributions"—*i.e.*, constitutionally protected speech—right before a "major state-wide election." (ECF No. 70 at 3.) That objective directly contravenes the public interest, because enforcement of § 1513 pending appeal would necessarily "reduce[] the quantity of expression by restricting the number of issues discussed, the depth of their exploration, and the size of the audience reached." *Buckley v. Valeo*, 424 U.S. 1, 19 (1976).

## **Background**

This Court is familiar with the background, as set forth in the September 19, 2018 opinion, in which this Court held that Pennsylvania's complete ban on political contributions from persons associated with the gaming industry violates

the First Amendment and thus enjoined enforcement of § 1513.  (ECF Nos. 57, 58.)  The injunction went into effect immediately and the Court directed the case be closed.  (ECF No. 58.)  As a result, anyone previously barred by § 1513 from making political contribution is now permitted to do so without fear of sanction from the Commonwealth.  *See* Fed. R. Civ. P. 62(a)(1).  On October 17, 2018, the Defendants appealed this Court's ruling and moved to stay this Court's injunction pending appeal.  (ECF Nos. 68, 69, 70.)

## Legal Standard

"A stay [pending appeal] is an intrusion into the ordinary processes of administration and judicial review."  *Nken v. Holder*, 556 U.S. 418, 427 (2009) (internal quotation marks omitted).  "[A] stay is not a matter of right, even if irreparable injury might otherwise result."  *Id.* at 433 (quoting *Virginian R. Co. v. United States*, 272 U.S. 658, 672 (1926)).  Determining whether a stay is warranted instead involves "an exercise of judicial discretion."  *Id.*

The propriety of a stay pending appeal hinges on the following factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies."  *Id.* at 426, 434 (quoting *Hilton*, 481 U.S. at 776); *see, e.g.*, *Baker v. Adams Cty./Ohio Valley Sch.*

*Bd.*, 310 F.3d 927, 928 (6th Cir. 2002) (applying these factors in First Amendment context); *see also In re Revel AC, Inc.*, 802 F.3d 558, 568 (3d Cir. 2015). The moving party bears the burden of showing that a stay is warranted. *Nken*, 556 U.S. at 433-34.

<u>**Argument**</u>

The Defendants do not and cannot satisfy their burden of showing that the stay factors justify staying this Court's injunction pending appeal. Apart from the threshold point that the Defendants waited far too long (as described above), each factor weighs strongly against the Defendants' motion for stay: (i) the Defendants have minimal likelihood of success on appeal; (ii) denying a stay would cause no harm to the Defendants' or the Commonwealth's protected interests; (iii) granting a stay would cause considerable and irreparable harm to the Plaintiffs; and (iv) granting a stay would harm the public interest. This Court therefore should decline the Defendants' request to reinstate the Commonwealth's unconstitutional ban pending appeal.

**I.     The Defendants have not shown a likelihood of success on appeal.**

The Defendants must make a "*strong showing* that [they are] likely to succeed on the merits." *Nken*, 556 U.S. at 426 (quoting *Hilton*, 481 U.S. at 776) (emphasis added); *see Republic of Philippines v. Westinghouse Elec. Corp.*, 949 F.2d 653, 658 (3d Cir. 1991). Such a showing requires "a reasonable chance, or

probability, of winning" on appeal. *Pa. Democratic Party v. Republican Party of Pa.*, Civ. No. 16-5664, 2016 WL 6582659, at *5 (E.D. Pa. Nov. 7, 2016) (quoting *In re Revel AC, Inc.*, 802 F.3d at 568).

The Defendants cannot establish any reasonable chance of winning on appeal. This Court rightfully entered a permanent injunction against the enforcement of § 1513 on the ground that it violates the First Amendment.[2] (ECF Nos. 57, 58.) Under governing standards, § 1513 is not sufficiently tailored to achieve the Commonwealth's purported interest in preventing *quid pro quo* corruption. (ECF No. 57 at 24-31.) This Court concluded that Pennsylvania's "wholesale prohibition of contributions of any amount by citizens with even an attenuated connection to the gaming industry *far exceeds* the necessary scope of a prohibition seeking to eliminate corruption."[3] (*Id.* at 29-30 (emphasis added).) This Court's decision will be affirmed on appeal. It upholds the First Amendment and is faithful to Supreme Court precedent. *See, e.g.*, *McCutcheon*, 572 U.S. at 191, 207-08; *Citizens United v. F.E.C.*, 558 U.S. 310, 339-41, 359-60 (2010); *Buckley*, 424 U.S. at 19-21.

---

[2] The Plaintiffs certainly agree with the Court's injunction. As the Court is aware, the Plaintiffs did articulate a few moderately different grounds that also supported the injunction. For purposes of the forthcoming appeal, nothing in this response should be construed as a waiver of any arguments the Plaintiffs made, and the Plaintiffs preserve all arguments for appeal.

[3] That same rationale led the Pennsylvania Supreme Court to declare § 1513's operative language unconstitutional under state law. *DePaul*, 969 A.2d at 553-54.

District courts should not grant stays pending appeal where the motion merely "rehashes arguments that have been rejected in multiple forums" and "fail[s] to provide any reason for the Court to change its conclusion." *United States v. Judicial Watch, Inc.*, 241 F. Supp. 2d 15, 16 (D.D.C. 2003).   The Defendants' motion here relies exclusively on arguments that this Court rejected, including that § 1513 is constitutional simply because it is "generally accepted" that the gaming industry (in other states) has been historically prone to corruption. (ECF No. 70 at 4.)   As this Court already concluded, this argument fails because (i) the Commonwealth is impermissibly relying on "[m]ere conjecture about the risk of corruption or its appearance" to justify its sweeping restriction on First Amendment rights; and (ii) there is "no evidence that, in Pennsylvania, legalized gaming is uniquely susceptible to corrupt influence."  (ECF No. 57 at 6, 8, 26.) The Defendants' vague concerns about general corruption are in any event insufficient because, as this Court explained, preventing *quid pro quo* corruption or its appearance is the only governmental interest sufficient to justify restrictions on political contributions.  (*Id.* at 10, 29-31.)

The Defendants once again rely heavily on the same state court decisions that this Court distinguished, (ECF No. 70 at 4-5), each of which predates significant developments in First Amendment jurisprudence regarding political contributions, and each of which addressed different statutory terms that, unlike

here, were supported by some historical evidence of gaming-related corruption. (ECF No. 57 at 14-23); *see, e.g.*, *Judicial Watch, Inc.*, 241 F. Supp. 2d at 16.  As this Court ruled, *McCutcheon* and other modern federal cases compel the conclusion that § 1513's complete ban violates the First Amendment.  (ECF No. 57 at 24-31); *see, e.g.*, *Lodge No. 5 of Fraternal Order of Police ex rel. McNesby v. City of Phila.*, 763 F.3d 358, 376-79, 384 (3d Cir. 2014) (enjoining Philadelphia's wholesale ban on political contributions by police officers because it was not closely drawn to achieve the City's interests in curbing police-related corruption).

## II.     The Defendants have not shown that they will be irreparably injured absent a stay pending appeal.

The Defendants must "demonstrate that irreparable injury is likely, not merely possible, in the absence of a stay."  *In re Revel AC, Inc.*, 802 F.3d at 569 (internal alterations omitted).  The Defendants come nowhere near this standard. They fail even to describe what type of harm would be suffered by anyone, let alone what harm would be irreparable.

For starters, the Defendants' entire argument misconstrues the very nature of this action.  This case was brought under *Ex Parte Young*, 209 U.S. 123 (1908) and 42 U.S.C. § 1983 to prevent the Defendants in their official capacities from enforcing an unconstitutional statute.  In turn, the Defendants are the very public officials who have been so enjoined.  They cannot be "irreparably harmed" in their official capacities by being enjoined from enforcing an unconstitutional law.  They

have no official responsibility to effectuate illegal statutes.  *See, e.g.*, *ACLU v. Ashcroft*, 322 F.3d 240, 251 n.11 (3d Cir. 2003) ("neither the Government nor the public generally can claim an interest in the enforcement of an unconstitutional law") (citation and internal quotation marks omitted).  The only way that the Defendants could possibly show that there was something "irreparable" would be for them to show that the Court improperly enjoined them—which means the Court would have to find that the Court wrongly determined the law in its opinion and order leading to the injunction.  The Defendants have not made and cannot make such a showing.

Even if the notion of "irreparable harm" made sense in this context, the Defendants' supposed concerns are belied by their decision to delay a full month before seeking a stay.  (ECF Nos. 69, 70); *see Republican Party of Pa.*, 2016 WL 6582659, at *4 ("[p]laintiff's dilatory conduct weighs decidedly against granting the extraordinary relief it seeks—especially where, as here, an election is looming") (internal quotation marks and alterations omitted).  This Court's injunction has been in effect since September 19, 2018.  (ECF No. 58); *see* Fed. R. Civ. P. 62(a)(1).  The Plaintiffs and other individuals affiliated with licensed gaming have been permitted to make political contributions for more than one month without fear of sanction.  Not only have the Defendants failed to show that this Court's injunction has actually led to any *quid pro quo* corruption or a loss in

public confidence, but their delay in seeking relief also undermines their purported concern.

In any event, the Defendants have shown nothing that could qualify as irreparable harm in the first place. They mention in passing that, absent a stay, the public will lose confidence in the "integrity of the gaming industry." (ECF No. 70 at 6.) That supposed interest is not directed at preventing *quid pro quo* corruption and therefore cannot provide constitutional grounds for maintaining § 1513. Nor is there anything in the record to suggest that the purpose of § 1513 was to secure public confidence "in the gaming industry." The supposed point of that provision was to secure confidence in elected officials by preventing corruption. But even if securing confidence "in the gaming industry" was part of the statutory purpose, the Defendants' engage in rank speculation. They muse with no support that this Court's injunction will lead to a "flood" of political contributions to unspecified campaigns, which in turn will lead somehow to "lost confidence in . . . the fairness of games at casinos," which then could cause "patronage to casinos" and tax revenues to decline. (ECF No. 70 at 5-6.) This type of untethered conjecture cannot suffice to show that irreparable injury is likely to occur. *See, e.g., Phila. Fire Fighters' Union Local 22 v. City of Phila.*, 286 F. Supp. 2d 476, 481-82 (E.D. Pa. 2003) (rejecting argument that "allowing uniformed [Fire] Department

employees to make donations to their chosen political candidates would compromise the integrity of Fire Code inspections").

The Defendants also make a passing reference to the notion that somehow the Court's injunction will lead to diminished public confidence in the electoral process (a concern the Defendants should have sought to remedy right away, if it were true, given the impending election). (ECF No. 70 at 5.) This concern again has no grounding in any kind of record and thus suffers from the same kind of evidentiary shortcomings that led the Court to reject the Defendants' summary judgment arguments. Plus there cannot be a valid concern over the potential "flow of political contributions" that the Defendants complain will take place. (ECF No. 70 at 5.) Political contributions cannot harm the Defendants' or the Commonwealth's interests because they are a constitutionally protected form of speech, as this Court properly found. (ECF No. 57 at 5, 24-25, 29-31); *see McCutcheon*, 572 U.S. at 191 (admonishing that laws "may not regulate contributions simply to reduce the amount of money in politics"); *Buckley*, 424 U.S. at 21 ("[a] contribution serves as a general expression of support for the candidate and his views").

## III. The Plaintiffs will suffer irreparable harm if this Court's injunction is stayed pending appeal.

Permitting the Commonwealth to enforce § 1513 pending appeal would irreparably harm the Plaintiffs. "[T]here is no right more basic in our democracy

than the right to participate in electing our political leaders." *McCutcheon*, 572 U.S. at 191. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod*, 427 U.S. at 373; *K.A. ex rel. Ayers v. Pocono Mountain Sch. Dist.*, 710 F.3d 99, 113 (3d Cir. 2013) (same). "The harm is particularly irreparable where, as here, a plaintiff seeks to engage in political speech, as timing is of the essence in politics and a delay of even a day or two may be intolerable." *New York Progress & Prot. PAC v. Walsh*, 733 F.3d 483, 486 (2d Cir. 2013) (internal quotation marks omitted).

The harm—*established by law as irreparable*—is particularly acute in this case. The Commonwealth will be holding a major statewide election in one week. (ECF No. 70 at 3.)  As this Court has recognized, the Plaintiffs have a constitutional right to participate in that election by making political contributions. (*See* ECF No. 57 at 5, 25, 29-31.)  The Defendants ask for permission to block the Plaintiffs from exercising their First Amendment right to be full, active participants in the democratic process.  There is no support in the law for the Court to enter such a draconian order in violation of the very First Amendment rights that the Court's injunction vindicates.

The Defendants mischaracterize their motion as a request to "maintain the status quo."  (ECF No. 70 at 6.)  In this case, "the status quo is a condition not of rest, but of action."  *United States v. Price*, 688 F.2d 204, 212 (3d Cir. 1982)

(internal quotation marks omitted).  The status quo for more than thirty days—in the middle of the election cycle that the Defendants describe—has been that the Plaintiffs have been permitted to make political contributions.  The status quo now encompasses this Court's injunction.  Staying the injunction would likely lead to *three* radical shifts in the Plaintiffs' ability to exercise their First Amendment rights—"once from the injunction, another from the stay, and potentially a third [when] the injunction is reaffirmed after being stayed on appeal."  *Ohio State Conference of NAACP v. Husted*, 769 F.3d 385, 389 (6th Cir. 2014).  For these reasons, the Defendants' stated desire to preserve the status quo in fact weighs heavily against granting a stay.

But the Defendants misunderstand the law anyway.  Even if the "status quo" had § 1513 in place and enforceable, there is no prohibition against altering the status quo.  It is well established that, "where preserving the status quo will perpetuate harm against the moving party, an order altering the status quo may be appropriate." *O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 1002 (10th Cir. 2004) (en banc) (citing cases).  "[T]he focus always must be on prevention of injury by a proper order, not merely on preservation of the status quo." *Id.*; *United Food & Commercial Workers Union, Local 1099 v. Sw. Ohio Reg'l Transit Auth.*, 163 F.3d 341, 348 (6th Cir. 1998).

There is no merit to or support for the Defendants' bold argument, made without even acknowledging the Plaintiffs' First Amendment rights, that a stay will not harm the Plaintiffs because they "have never been able to make political contributions." (ECF No. 70 at 6.)  The Plaintiffs' First Amendment rights have long been denied.  The Defendants and the Commonwealth are solely responsible for that denial, and their efforts to sanction the Plaintiffs for making contributions have had a chilling effect on the Plaintiffs' political speech.  The fact that the Commonwealth has abridged the Plaintiffs' constitutional rights in the past does not support infringing the Plaintiffs' rights in the future.  The Plaintiffs will suffer irreparable constitutional harm if the Court grants a stay.

**IV.   A stay would be against the public interest.**

Finally, the Defendants fail to show that a stay would serve the public interest.  *See, e.g.*, *Walsh*, 733 F.3d at 488.  Instead, they assert that their unpersuasive and speculative discussion of the second stay factor "clearly establishes that a stay is in the public interest." (ECF No. 70 at 7.)  In other words, the Defendants ask this Court to have faith that their widespread effort to abridge First Amendment rights, mere weeks before a major election, reflects the best interests of the public.

This Court's injunction—not the Defendants' requested stay—serves the public interest.  "[T]he Third Circuit has held that suppressing protected expression

does not advance any public interest." *Jamal v. Kane*, 105 F. Supp. 3d 448, 463 (M.D. Pa. 2015) (citing cases).   By contrast, "injunctions protecting First Amendment freedoms are always in the public interest." *Christian Legal Soc'y v. Walker*, 453 F.3d 853, 859 (7th Cir. 2006); *see, e.g.*, *Walsh*, 733 F.3d at 488 (same).   The public interest is served when courts uphold the democratic ideals underlying the First Amendment, which was ratified "to secure the widest possible dissemination of information from diverse and antagonistic sources and to assure unfettered interchange of ideas for the bringing about of political and social changes desired by the people." *Buckley*, 424 U.S. at 49 (internal quotation marks omitted).   By contrast, restrictions on political contributions inherently "reduce[] the quantity of free expression." *Id.* at 19; *see Lodge No. 5 of Fraternal Order of Police ex rel. McNesby*, 763 F.3d at 368.   This Court should not enter a stay that, via § 1513, would limit full participation in the political process and adversely affect the marketplace of ideas that the First Amendment was designed to protect.

## Conclusion

This Court should deny the Defendants' motion for a stay pending appeal.

Dated:   October 31, 2018         By: */s/  Nathan Heller*
_____

NATHAN HELLER
TIMOTHY LOWRY
COURTNEY SALESKI (admitted *pro hac vice*)
ADAM DESIPIO (admitted *pro hac vice*)
DLA PIPER LLP (US)
One Liberty Place
1650 Market Street, Suite 4900
Philadelphia, PA  19103-7300
Tel:  (215) 656-3300 / Fax: (215) 656-3301
nathan.heller@dlapiper.com
timothy.lowry@dlapiper.com
courtney.saleski@dlapiper.com
adam.desipio@dlapiper.com

JOHN J. HAMILL (admitted *pro hac vice*)
DLA PIPER LLP (US)
444 West Lake Street, Suite 900
Chicago, IL  60606-0089
Tel:  (312) 368-4000 / Fax: (312) 236-7516
john.hamill@dlapiper.com

AMANDA L. MORGAN (admitted *pro hac vice*)
JESSE MEDLONG (admitted *pro hac vice*)
DLA PIPER LLP (US)
555 Mission Street, Suite 2400
San Francisco, CA  94105
Tel:  (312) 836-2500 / Fax: (312) 836-2501
amanda.morgan@dlapiper.com
jesse.medlong@dlapiper.com

Attorneys for Plaintiff
PASQUALE T. DEON, SR.

-16-

Dated:    October 31, 2018          By: */s/ Alexander Saksen*
                                        S. MANOJ JEGASOTHY (PA 80084)
                                        (ADMISSION PENDING)
                                        ALEXANDER SAKSEN (PA 86049)
                                        GAVIN EASTGATE (PA 86061)
                                        LEE K. GOLDFARB (PA 309587)
                                        Gordon & Rees LLP (US)
                                        707 Grant Street
                                        Suite 3800
                                        Pittsburgh, PA 15219
                                        Tel:(412)577-7400/ Fax:(412)347-5461
                                        Mjegasothy@grsm.com
                                        Asaksen@grsm.com
                                        Geastgate@grsm.com
                                        Lgoldfarb@grsm.com

                                        Attorneys for Plaintiff
                                        MAGGIE HARDY MAGERKO